**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| v. | * | Criminal Case: SAG-17-0452 |
| | * | Civil Case: SAG-19-1713 |
| THOMAS ALLERS | * | |
| | * | |
| | *** | |

**<u>MEMORANDUM</u>**

Thomas Allers has filed a motion to vacate his conviction and sentence under 28 U.S.C. § 2255 (ECF 49). He raises five grounds as bases for relief. First, Mr. Allers alleges that his counsel, Attorney Gary Proctor, did not consult with him about filing a direct appeal despite knowing that Mr. Allers was dissatisfied with his sentence. Second, Mr. Allers alleges that his prosecution violated the Tenth Amendment. Third, Mr. Allers claims that the factual predicate supporting his conviction, specifically the robbery and extortion of B.H. and T.A., did not occur; and fourth, that his guilty plea was unintelligent, unknowing, and involuntary. Lastly, he alleges that his counsel's deficient performance deprived him of effective assistance, by failing to object to improperly calculated advisory sentencing guidelines. For the reasons explained below, Mr. Allers's motion is without merit and will be denied.

Mr. Allers was indicted and charged with two counts of Racketeering Conspiracy and five counts of Hobbs Act Robbery and Extortion. (ECF 1, Indictment). His defense counsel, Attorney Proctor, negotiated a plea under Fed. R. Crim. P. 11(c)(1) to a single count of Racketeering Conspiracy in violation of 18 U.S.C. § 1963(d) and an agreed-upon maximum sentence of a 20-year term of incarceration, plus 3 years of supervised release and a fine. In the statement of facts within his written plea agreement, Mr. Allers admitted to participating in nine robberies, one being the March 2, 2016, robbery of B.H. and T.A. (ECF 20, Plea Agreement). Mr. Allers also expressly

agreed that he was giving up his right to appeal "whatever sentence is imposed, including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised." (ECF 20).

During his rearraignment hearing, Mr. Allers verbally affirmed to the Court that he had read and understood the plea agreement he signed, including the statement of facts that illustrated his participation in the nine robberies. (ECF 66, Rearraignment Tr.). The presentence investigation report determined that based upon a total offense level of 35 and a criminal history category of I, the advisory guideline imprisonment range was 168 months to 210 months in prison. (ECF 23, Presentence Investig. Rep. ¶ 167). In Mr. Allers's sentencing memorandum, Attorney Proctor indicated that he had reviewed the presentence report with Mr. Allers and that both agreed to the offense level, criminal history category, and guidelines range. (ECF 34, Sentencing Memo). During sentencing, United States District Judge Catherine C. Blake discussed with counsel the base offense level for robbery, the circumstances leading to adjustments in the offense level, Mr. Allers's prompt acceptance of responsibility, his remorse, and other relevant circumstances. (ECF 46, Sentencing Tr.). Ultimately, the Court decided to accept the recommendation outlined in the presentence report, imposing a sentence of 180 months in custody followed by three years of supervised release. (*Id.*). The Court also advised Mr. Allers that in light of the plea agreement and the sentence, he probably had no right to appeal, but if he chose to note an appeal it would have to be within fourteen days. (*Id.*). Mr. Allers acknowledged that he understood he had no right to appeal. (*Id.*). Mr. Allers was sentenced on May 11, 2018; he noted no appeal. This motion under 18 U.S.C. § 2255 was docketed on June 10, 2019. (ECF 49, Mot. to Vacate).

Mr. Allers first alleges that Attorney Proctor did not consult with him about filing a direct appeal, instead informing him that he had waived his appellate rights.  Mr. Allers contends that he told his counsel after sentencing and while in court that he was dissatisfied with his sentence, and that Attorney Proctor's failure to note an appeal constitutes ineffective assistance of counsel. To sustain a claim for ineffective assistance, a petitioner must satisfy the two-prong test set forth by the Supreme Court in *Strickland v. Washington*. 466 U.S. 668, 687 (1984).  First, the petitioner must show that his "counsel's representation fell below an objective standard of reasonableness." *Id.* at 687–88.  Specifically, the petitioner must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690.  In evaluating such conduct there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  To satisfy the second prong of the *Strickland* test, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  A Court reviewing an ineffective assistance claim need not consider the prongs in order or even address both components of the inquiry, if the defendant makes an insufficient showing on one of the two prongs. *Id.* at 2069.

On December 1, 2017, Mr. Allers signed his plea agreement, which expressly stated that he was giving up his right to appeal. (ECF 20). Additionally, at his re-arraignment hearing, the Court advised Mr. Allers that by submitting his guilty plea to racketeering conspiracy he was giving up his right to appeal his conviction and his sentence. (ECF 66). When asked whether the Court's summary of the plea agreement, including the waiver of his right to appeal, was a correct summary of what he believed his agreement with the Government to be, Mr. Allers replied by saying "yes." (*Id.*). The record further indicates that Attorney Proctor consulted with Mr. Allers

about the waiver, such that he understood his rights and the effects of waiving them. Mr. Allers expressly stated that he was "completely satisfied with the representation of his attorney" and that there were no other issues he needed to ask Attorney Proctor about. (*Id*.). At his sentencing, the Court once again informed Mr. Allers that it did not believe he had a right to appeal his sentence, but that he could consult with counsel and note an appeal within fourteen days. (ECF 46). Mr. Allers again acknowledged that he understood. (*Id*.). While Mr. Allers indicates in his motion that he expressed dissatisfaction to his counsel about his sentence, he also notes that his counsel recognized his dissatisfaction and informed him that his plea agreement and guilty plea had waived his right to appeal. Finally, and most importantly, Mr. Allers never alleges that he directed Attorney Proctor to file an appeal. Accordingly, the facts presented in the record do not support Mr. Allers's claims that Mr. Proctor's representation fell below the objective standard of reasonableness. Moreover, Mr. Allers would be unable to establish that the results of the proceeding would have been different had Mr. Proctor noted an appeal, in light of his unequivocal waiver of his appellate rights.

Mr. Allers's second argument asserts a Tenth Amendment violation. He states that "the federal governments [sic] extension of its ordinary criminal laws to state law enforcement officers encroaches on state sovereignty and violates the [Tenth Amendment]." (ECF 49). This claim also fails. Because Mr. Allers did not raise this claim on direct appeal and raises it for the first time on collateral review, he must show both cause for failing to raise it and actual prejudice resulting from the error. *United States v. Mikalakunas*, 186 F.3d 490, 492-493 (4th Cir. 1999). Mr. Allers has shown neither cause nor prejudice for his procedural default, and accordingly, his Tenth Amendment claim fails.

Mr. Allers's third and fourth claims are best addressed together.  He argues that the facts surrounding the robbery and extortion of B.H. and T.A., as contained in his written plea agreement, are false. He also alleges that his guilty plea was constitutionally unintelligent, unknowing, and involuntary because he did not understand the nature of the charges against him. Rule 11 "provides for the placing of plea agreements on the record, for full inquiry into the voluntariness of the plea, for detailed advice to the defendant concerning his rights and the consequences of his plea and a determination that the defendant understands these matters, and for the determination of the accuracy of the plea." *United States v. Lambey,* 974 F.2d 1389, 1395 (4th Cir.1992). "[A] defendant's solemn declarations in open court affirming [a plea] agreement . . . carry a strong presumption of verity, because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." *United States v. Lemaster,* 403 F.3d 216, 221 (4th Cir. 2005) (citations omitted); *see also United States v. Lambey,* 974 F.2d 1389, 1395 (4th Cir. 1992) (*en banc*) ("If the information given by the court at the Rule 11 hearing corrects or clarifies the earlier erroneous information given by the defendant's attorney and the defendant admits to understanding the court's advice, the criminal justice system must be able to rely on the subsequent dialogue between the court and defendant."). "In the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'" *Lemaster,* 403 F.3d at 221–22 (citations omitted).

During Mr. Allers's rearraignment hearing, the Court conducted an extensive inquiry in order to adhere to the requirements of Rule 11 and inform the defendant of "the nature of [the] charge to which the defendant is pleading," and "ensur[re] that his plea [was] voluntary." Fed. R. Crim. P. 11. To inform Mr. Allers of the nature of his charges, the Court specifically queried:

**THE COURT:** I take it you were able to read and understand the charges against you and the plea letter in this case?

**THE DEFENDANT:** Yes, ma'am.

….

**THE COURT:** Okay. The charge that you're pleading guilty to, Count 1, is a racketeering conspiracy. Do you understand there are several things that the Government would have to prove beyond a reasonable doubt if the case went to trial? They'd have to prove, first of all, that an enterprise did exist, as charged in the indictment, and that enterprise affected interstate or foreign commerce. They'd have to prove that you were associated with or employed by the enterprise. And in particular, most important, that you knowingly and willfully became a member of that conspiracy. You were part of that agreement. You knew what it was about. You wanted to help make it succeed. Do you understand that's what the Government would have to prove, as well as, of course, the dates generally that are charged in the indictment and that part of this was in Maryland?

**THE DEFENDANT:** Yes, ma'am.

(ECF 66).

The Court next asked Mr. Allers questions to ascertain whether he voluntarily agreed to the guilty plea:

**THE COURT:** And it appears that -- at the end of the agreement I see your signature and also there's a statement of facts at the end. But let me ask you this, Mr. Allers: Did you read and sign this agreement?

**THE DEFENDANT:** I did, ma'am.

**THE COURT:** All right. Directly above your signature, it says, "I have read this agreement, including the sealed supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the factual and advisory guideline stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney." Is that all correct, Mr. Allers?

**THE DEFENDANT:** Yes, ma'am.

(ECF 66).

The Court also asked Mr. Allers specific questions about the statement of facts contained in his plea agreement that detailed his participation in the robbery and extortion of B.H. and T.A.:

> **THE COURT**: Paragraph 7 refers to the statement of facts. It is fairly lengthy. I'll just go over a little bit of it with you. But to be clear, you did read this statement of facts, sir?
>
> **THE DEFENDANT:** I did, ma'am.
>
> **THE COURT:** You did. Okay.
>
> …
>
> **THE COURT**: You're admitting that you participated in specific robberies listed below, among others; that you were armed with your police department service firearm during the commission of the robberies; that individual victims were physically restrained to facilitate the commission of the offense; and that you did approve false and fraudulent incident reports, and other official documents in some cases, to conceal the criminal conduct and obstruct justice. The first robbery, I'll just say, that's alleged here that you're admitting to occurred March 11th, 2014, robbery of G.W. and Y.W. in Baltimore County. The second one was October 8th of 2014, robbery of D.K. in Baltimore City. The third is April 3rd of 2015, the robbery of D.M. and D.R.; that is in Baltimore City. July 31st of 2015, robbery of Z.N. and C.J.; that was in Anne Arundel County. The next one is February 10th of 2016, the robbery of P.E.; that was in Baltimore City. The next one is February 23rd of 2016, the robbery of B.C.; that was at a home in Baltimore County. March 2nd, 2016 was the robbery of B.H. and T.A., and that was a home in Baltimore City. And then April 28th, 2016, a robbery of L.W. and D.R. Doesn't seem to indicate which jurisdiction that was in, but presumably in Maryland.
>
> …
>
> And, finally, May 28th, 2016, the robbery of A.C., and that was in Anne Arundel County. So my question, sir -- and I obviously didn't read that word for word -- but do you agree that that statement of facts is correct and that you did what it says in there you did?
>
> **THE DEFENDANT:** Yes, ma'am.
>
> **THE COURT:** Okay, sir, so you do agree you're guilty of this offense?
>
> **THE DEFENDANT:** Yes, ma'am.

(ECF 66).

Mr. Allers acknowledged before the Court that he read, understood, and consented to the terms of his plea agreement, along with the statement of facts detailing his participation in nine robberies and extortions including that of B.H. and T.A. The Court also established that Mr. Allers understood the elements of racketeering conspiracy that the Government would have to prove if the case went to trial. In fact, Mr. Allers never raised any concern regarding an inability to understand the charges against him during the guilty plea hearing or the sentencing. Additionally, Mr. Allers expressly acknowledged that he knowingly and voluntarily entered into the plea agreement with the Government. Accordingly, nothing in the record supports his present claims that that the facts surrounding the robbery and extortion of B.H. and T.A. are inaccurate, or that his guilty plea was less than intelligent, knowing, and voluntary.

Although this Court has addressed the merits of Mr. Allers's third and fourth claims, it alternatively agrees with the Government that those claims are procedurally barred. See *Bousley v. United States,* 523 U.S. 614, 621(1998) (holding that by not challenging the validity of his plea, "petitioner procedurally defaulted the claim he now presses."); *Id*. ("the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review."). Therefore, both on the merits and procedurally, Mr. Allers's third and fourth claims fail.

Mr. Allers's final claim is that the Court did not comply with U.S.S.G. §1B1.3, the relevant conduct guideline, by improperly identifying the scope of the jointly undertaken criminal activity and the foreseeability of the co-conspirators' criminal conduct. Mr. Allers also alleges that his counsel was deficient by failing to challenge "factual inaccuracies" within the presentence report, which he alleges deprived him of effective assistance of counsel. His sentencing guidelines argument does not provide a proper basis for collateral attack under §2255. "[N]on-constitutional error does not provide a basis for collateral attack unless it involves a fundamental defect which

inherently results in a complete miscarriage of justice or is inconsistent with the rudimentary demands of fair procedure." *Mikalakunas*, 186 F.3d at 495–96 (internal quotation marks and citations omitted). The Fourth Circuit has held that misapplication of the guidelines does not amount to a miscarriage of justice. *Id*. at 496. Accordingly, any potential guidelines error here does not meet this stringent standard.

Turning to Mr. Allers's argument that his counsel was deficient, this Court once again looks to *Strickland* and finds that Mr. Allers fails to show that his "counsel's representation fell below an objective standard of reasonableness." *Strickland* at 687–88. Mr. Allers argues specifically that his counsel failed to challenge factual inaccuracies within the presentence report, including which co-conspirators' actions could be reasonably foreseeable to him, his crimes involving firearms, and the amount of money that he received from other officers. But the facts of the robberies outlined in the presentence report are identical to the facts outlined in the plea agreement. As stated above, Mr. Allers acknowledged in writing and at his plea colloquy that he read, understood, and consented to those facts. Moreover, Attorney Proctor informed the Court, both in the sentencing memorandum and during the sentencing hearing, that he had reviewed the presentence report with Mr. Allers. (ECF 34; ECF 46). In the sentencing memorandum specifically, Attorney Proctor wrote "we agree that the Guideline Range is Offense Level 35, Criminal History Category I, and a range of 168-210 months." (ECF 34). At sentencing, the Court asked if there were any additions, corrections, or modifications that needed to be made to the report, to which Attorney Proctor responded, "No, ma'am." (ECF 46). Because the record contains no indicia that Mr. Allers disagreed with the facts in the presentence report as of the time of his sentencing, Mr. Allers has not shown that his counsel's failure to object to any alleged factual inaccuracies fell below an objective standard of reasonableness.

Furthermore, Mr. Allers cannot now raise new objections to the accuracy of the findings in the presentence report. In *United States v. Parker*, the Fourth Circuit held that failure to object to factual inaccuracies in the presentence report constitutes waiver of the issue on appeal. 1992 WL 144766, at *2 (4th Cir. 1992). More specifically, where the defendant "fail[s] to object to or present evidence that would contradict the finding[s] in the presentence report…[and] [a]bsent some affirmative showing by [the defendant] that the information was inaccurate, the district court [is] entitled to adopt the findings of the presentence report." *Id.* The record indicates that during and leading up to sentencing, Mr. Allers and his counsel did not raise or present any evidence regarding factual inaccuracies in the presentence report, nor has Mr. Allers made an affirmative showing that the report was inaccurate.

In summary, Mr. Allers has shown no grounds for relief. The motion to vacate will be denied, and no certificate of appealability will be issued. *See* 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.") (emphasis added); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (describing the "substantial showing" standard). A separate Order follows.

10/27/2022                                               /s/

Date                                               Stephanie A. Gallagher

U.S. District Court Judge